**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ENVIRONMENTAL MANUFACTURING
SOLUTIONS, LLC and HEARTLAND
ENERGY GROUP, LTD.,

        Plaintiffs,

v.                                                     Case No: 6:18-cv-156-Orl-40KRS

FLUID ENERGY GROUP, LTD. and
CLAY PURDY,

        Defendants.
_____/

## **ORDER**

This cause comes before the Court on Defendants Fluid Group, Ltd., and Clay Purdy's (collectively, "**Defendants**") Motion to Dismiss (Doc. 21), filed March 6, 2018. On May 9, 2018, Magistrate Judge Karla R. Spaulding submitted a Report and Recommendation (Doc. 45 (the "**Report**")), recommending that Defendants' Motion to Dismiss be granted for lack of personal jurisdiction. On May 23, 2018, Plaintiffs Environmental Manufacturing Solutions, LLC and Heartland Energy Group, Ltd. (collectively, "**Plaintiffs**"), filed an Objection (Doc. 46) to the Report. Upon *de novo* review, the Court agrees with the findings and conclusions in the Report.

**I.    BACKGROUND**

On January 4, 2016, Plaintiffs commenced this action against Defendants in state court. (Doc. 2). Defendants thereafter removed to this Court on January 30, 2018, pursuant to the Court's diversity jurisdiction. (Doc. 1). In the Amended Complaint,

Plaintiffs allege that Defendants tortiously interfered with Plaintiffs' business relationships and violated Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"). (Doc. 14).

The Amended Complaint alleges that Fluid Group, Ltd. ("**Fluid**") is a corporation incorporated in Alberta, Canada, with its principal place of business also in Alberta, Canada. (*Id.* ¶ 3). Purdy, CEO and Chairman of Fluid, is a Canadian citizen domiciled in Canada. (*Id.* ¶ 2). Environmental Manufacturing Solutions, LLC ("**EMS**") is a Florida limited liability company with its principal address in Melbourne, Florida. (Doc. 14, ¶ 1). Heartland Energy Group, Ltd. ("**HEG**") is a Nevada corporation with its principal addresses in Grain Valley, Missouri, and Melbourne, Florida. (*Id.* ¶ 2). HEG and EMS distribute and sell mineral acid replacement products around the world. (*Id.* ¶¶ 8–10).

Fluid and HEG were parties to several manufacturing and licensing agreements, which Fluid attempted to rescind through arbitration with the International Chamber of Commerce ("**ICC**"). (*Id.* ¶ 12). The ICC denied Fluid's theories for rescission, and as a result, the parties settled the remaining claims and Fluid paid HEG substantial sums. (*Id.* ¶¶ 15–18). However, Fluid "continued to harass [HEG] due to FLUID's financial situation and dissatisfaction with the results from the ICC proceeding." (*Id.* ¶ 19).

A few weeks after the ICC proceeding, Fluid wrote a letter to the Environmental Protection Agency ("**EPA**") requesting a criminal investigation of HEG, which the EPA declined to undertake. (*Id.* ¶¶ 20–22; Doc. 14-2 ("**EPA Letter**")). The EPA Letter contained many mischaracterizations and falsehoods regarding the ICC proceeding. (Doc. 14, ¶ 21). Despite the EPA's refusal to investigate, Fluid and Purdy proceeded to send the EPA Letter to customers of HEG and EMS in an attempt to interfere with their business relationships. (*Id.* ¶ 25). Fluid and Purdy also spoke with HEG and EMS

customers about the substance of the EPA Letter, posted comments on the websites of HEG and EMS customers, and had multiple telephone conversations convincing customers to not do business with HEG and EMS. (*Id.* ¶ 27).

The Amended Complaint does not allege that Fluid contacted any HEG or EMS customers of HEG or EMS in Florida or sold any of its products in Florida. (Doc. 21-1, ¶¶ 8–9). The Amended Complaint only specifically identifies two customers contacted by Fluid and Purdy: (1) Brock White, and (2) Independent Oil Fields. (Doc. 14, ¶¶ 28, 42). Brock White is a Wyoming company operating principally out of Minnesota. (Doc. 8-1). Independent Oilfield Chemicals ("**IOC**") is a Delaware corporation operating principally out of Colorado. (Doc. 8-2). IOC purchased product from HEG on behalf of Liberty Oilfield Services ("**Liberty**"), a Delaware company operating principally out of Texas. (*Id.*). None of the contact between Fluid with Brock White or IOC took place in Florida.

Due to Fluid and Purdy's interference, Brock White and IOC ceased doing business with Plaintiffs. (Doc. 14, ¶¶ 36–38, 46–48). As a result, Plaintiffs lost millions of dollars in business. (*Id.*). Thereafter, Plaintiffs brought claims for tortious interference with EMS's business relationship with Brock White, tortious interference with HEG's business relationship with Liberty and IOC, and violations of the FDUTPA. (*Id.* ¶¶ 49–71). On March 6, 2018, Defendants moved to dismiss the Amended Complaint, arguing: (1) the Court lacks personal jurisdiction over them; (2) service of process was insufficient; (3) Plaintiffs' tortious interference claims fail to state claims on which relief can be granted; and (4) Plaintiffs' FDUTPA claims fail to state claims upon which relief can be granted. (Doc. 21). The Magistrate Judge recommended granting Defendants' Motion to Dismiss. (Doc. 45).

## II. STANDARD OF REVIEW

When a magistrate judge has been designated to decide a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying proposed findings of fact and the recommended disposition. Fed. R. Civ. P. 72(b)(1). Any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to seek the district judge's review by filing objections to those specific portions of the decision with which the party disagrees. Fed. R. Civ. P. 72(b)(2). The district judge must then make a *de novo* determination of each issue to which objection is made. Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam). In doing so, the district judge may consider arguments not previously raised before the magistrate judge. *See United States v. Franklin*, 694 F.3d 1, 6 (11th Cir. 2012). The district judge may then accept, reject, or modify the magistrate judge's recommendation, receive additional evidence or briefing from the parties, or return the matter to the magistrate judge for further review. Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

Plaintiffs object solely to Magistrate Judge Spaulding's findings related to personal jurisdiction. Accordingly, the Court will only address the issue of personal jurisdiction. In their Motion to Dismiss, Defendants argue that the Court lacks personal jurisdiction over them because: (1) they are not residents of Florida; (2) they do not have offices in Florida; (3) they do not conduct business in Florida; (4) no alleged tortious acts have been committed in Florida; and (5) they do not have "substantial" activity in Florida. (Doc. 21, p. 11–16).

Magistrate Judge Spaulding set forth the framework a federal court must analyze to determine whether it has personal jurisdiction over a nonresident defendant:

> For a district court to have personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must provide a basis for exercising jurisdiction; and (2) exercising jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

(Doc. 45, p. 8). Magistrate Judge Spaulding found that Defendants' purported actions—namely, its tortious interference with Plaintiffs' business relationships causing Plaintiff to suffer injury in Florida—fell within the purview of one of the specific jurisdiction prongs of Florida's long-arm statute.[1] *See* Fla. Stat. § 48.193(1)(a)(2). However, Magistrate Judge Spaulding found that exercising jurisdiction over Defendants would violate the Due Process Clause. (Doc. 45, p. 14).

In specific personal jurisdiction cases, courts apply a three-part due process test: (1) whether plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" herself of the privilege of conducting business within the form; and (3) whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1350. In the Report, Magistrate Judge Spalding found that Plaintiffs have not shown that Defendants purposefully availed themselves of the privilege of doing

---

[1] Florida's long-arm statute provides for jurisdiction in Florida courts, as well as federal district courts, over nonresident defendants who commit certain acts. Fla. Stat. § 48.193. The statute provides for both general and specific jurisdiction. "Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.27 (11th Cir. 2009)). A nonresident defendant may be subject to specific jurisdiction for "committing a tortious act" in Florida. Fla. Stat. § 48.193(1)(a)(2).

5

business in Florida, and therefore recommended that Defendants' motion to dismiss be granted. (Doc. 45, p. 15). Plaintiffs' Objection only challenges this portion of the Report. (Doc. 46, p. 2). Specifically, Plaintiffs' Objection argues that Defendants purposefully availed themselves of the privilege of doing business in Florida by communicating with customers about a "Florida-derived legal document" from the 2016 ICC proceeding that took place in Orlando, Florida. (*Id.* at 5).

In intentional torts cases such as this one, courts often apply the *Calder* "effects test" to determine whether purposeful availment has occurred.[2] *See Calder v. Jones*, 465 U.S. 785 (1984); *Louis Vuitton*, 736 F.3d at 1356. The effects test is met when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated could be suffered in the forum state." *Id.* (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2013)). The test focuses on the defendant's conduct directed at the forum. *Calder*, 465 U.S. at 788.

In *Calder*, the plaintiff brought suit in California against nonresident defendants, claiming she had been libeled in an article written by the defendants that was published in a newspaper with its largest circulation in California. *Id.* In determining that jurisdiction was proper, the Court focused on "the relationship among the defendant, the forum, and the litigation." *Id.* at 788–89. The Court found that the libelous article "concerned the California activities of a California resident," "impugned the professionalism of an entertainer whose television career was centered in California," "was drawn from California sources," and produced "the brunt of the harm, in terms both of [the plaintiff's]

---

[2] Neither party briefed the traditional purposeful availment test, and Plaintiffs do not contend that it provides a basis for jurisdiction in this case. Accordingly, the Court does not discuss it.

emotional distress and the injury to her professional reputation," in California. *Id*. Accordingly, "California [wa]s the focal point of both the story and the harm suffered." *Id*. The defendants' conduct was "expressly aimed at" California, and therefore they could reasonably anticipate being haled into court there. *Id.* at 789–90.

In *Walden v. Fiore*, the Court clarified the *Calder* effects test, explaining that although the Court recognized the effects on the plaintiff in its reasoning, the jurisdictional inquiry properly focuses on the *defendants'* relationship with the forum and the litigation. 571 U.S. 277, 287 (2014) (emphasis added). In *Walden*, the Nevada plaintiff sued a Georgia police officer in Nevada, alleging that her Fourth Amendment rights were violated when the officer seized plaintiff's belongings in a Georgia airport. *Id.* The Court found that the Nevada court could not exercise personal jurisdiction over the nonresident defendant "[b]ecause the defendant had no other contacts with Nevada, and because a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (citation omitted). The Court clarified that in *Calder*, exercising personal jurisdiction over the defendants was proper because the effects caused by the defendants' article connected the defendants conduct to California. *Id.* at 1124. It was this connection "combined with the various facts that gave the article a California focus" that sufficed for the exercise of personal jurisdiction over the defendants. *Id.* Therefore, in *Walden*, it was not enough that the defendant allegedly "directed his conduct at plaintiffs whom he knew had Nevada connections." 571 U.S. at 289. Rather, the proper inquiry was whether the "defendant's conduct connect[ed him to Nevada] in a meaningful way." *Id.* at 290.

Plaintiffs contend that Defendants' conduct satisfies the effects test because Defendants used a "Florida-derived legal document" to tortiously interfere with Plaintiff's business relationships. (Doc. 46, p. 5). The ICC proceeding took place in Orlando, Florida, which produced the "Florida-derived legal document" to which Plaintiffs refer. *Id.* Plaintiffs allege that "Defendants did not like the [ICC proceeding] outcome yet flashed the [document] around because it contained criticisms of the Plaintiffs that Defendants have subsequently used to tortiously interfere with Plaintiffs' customers." *Id.* Accordingly, Plaintiffs claim that Defendants' conduct satisfies the effects test because they are "meaningfully connected" to Florida through their use of the "Florida-derived legal document." *Id.*

The Court is unconvinced by Plaintiffs' argument that using a "Florida-derived legal document" creates the requisite defendant-forum connection to support the exercise of specific personal jurisdiction over Defendants. Plaintiffs have not demonstrated how using the document connects Defendants to Florida as contemplated in *Calder* and *Walden*, which require a defendant's conduct to connect them to the forum in a "meaningful way." *See Walden*, 571 U.S. at 290; *Calder*, 465 U.S. at 788. Defendants did not contact any customers in Florida, nor did any of their allegedly tortious conduct occur in Florida. (Doc 14). Plaintiffs only allege that Defendants attended an arbitration in Florida and then referenced the "Florida-derived legal document" in their correspondence with customers and the EPA. (Doc. 46, p. 3). The Court find that this conduct fails to create "meaningful connection" between Defendant, Florida, and the claims at issue. *See Walden*, 571 U.S. at 290 (focusing on the relationship among the defendant, the forum, and the litigation).

Notably, Plaintiffs do not cite to a single case, nor could the Court find such a case, that supports the proposition that a defendant who briefly visits a state for a legal proceeding may be haled to court in that state for alleged torts taking place outside the forum. (Doc. 46). Attending the ICC proceeding in Florida cannot satisfy the second and third prongs of the *Calder* effects test requiring Defendants (1) aim conduct at Florida that (2) Defendants should have anticipated would cause harm in Florida. *See Calder v. Jones*, 465 U.S. 785 (1984). Although attending the ICC proceeding could be interpreted as conduct "aimed at Florida," it is not the same conduct that Defendants should have anticipated would "cause the harm." *See id.* Rather, the allegedly tortious conduct that caused harm is Defendants' communication with Plaintiffs' customers, which all took place outside of Florida. (Doc. 14); *see id.*

Without additional evidence that Defendants directed conduct at Florida they should have known would lead to harm, the facts regarding the ICC proceeding and the "Florida-derived legal document" cannot alone satisfy the effects test. *See Calder*, 465 U.S. at 788. Accordingly, the Court finds that Defendants did not purposefully avail themselves of the privilege of doing business in Florida.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Objection (Doc. 46) is **OVERRULED**.

2. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 45) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

3. Defendants Motion to Dismiss Plaintiff's (Doc. 21) is **GRANTED**.

4. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on November 30, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties